KITCHENS, Justice,
dissenting:
¶ 11. I respectfully dissent. Sims was convicted only of the assault of Mary Beth Broome. Virgie Stevens was not a victim of Sims’s assault upon Mary Beth Broome, and thus I find that the imposition of restitution for Stevens within the sentencing process for a crime committed against Broome constitutes an illegal punishment.
¶ 12. The majority recounts that, “[f]ol-lowing the State’s recitation of the facts, the court said, ‘then, Johnny Ray Sims, before I accept your plea, is there anything you want to change about what we’ve gone over?’ ” Sims replied, “ ‘No, sir.’ ” Based on the cited colloquy, the majority opines that, “it was undisputed that three people suffered pecuniary damages as a result of Sims’s criminal activities.” Under Mississippi Code Section 99-37-3, which defines “criminal conduct” for the purposes of the restitution statute, the majority implies that Sims admitted criminal conduct resulting in pecuniary loss to all three victims, since he interposed no objection to the State’s recitation of the facts. But the State never made “an offer of proof ... before the court and the defendant at the plea hearing” that “three wom *305 en were injured and incurred medical expenses” as a result of Sims’s conduct, as the majority posits. The majority is correct that the State offered proof “that Sims struck two vehicles and crashed his car into a tree during a high-speed chase he initiated in an attempt to flee law-enforcement officers.” But the State mentioned only one victim, Broome: “Through medical testimony, the State would expect to prove that Mary Beth Broome’s vehicle was struck by Mr. Sims’fs] vehicle, and that crash caused her to have cervical disk displacement.” No offer of proof was made with regard to any injuries and medical expenses incurred by Stevens or Angelina Robinson, Sims’s passenger. Respectfully, the majority’s conclusion that Sims admitted causing pecuniary harm to all three victims does not follow from the record.
¶ 13. Further, before the underlying facts of the case were read to the court by the prosecutor, the following exchange occurred:
Judge: You’re ready, then, to enter your plea?
Sims: Yes, sir.
Sims’s Attorney: Your Honor, I’d just like to bring to the court’s attention this is a plea in his best interest.
Judge: Okay. I don’t need to have the charge formally read to you, then?
Sims: No, Sir.
Judge: You understand what it is?
Sims: Yes, Sir.
Judge: It’s a charge of aggravated assault. And to that charge, Johnny Ray Sims, how do you plead?
Sims: Guilty.
(Emphasis added.) The judge clearly indicated during the plea colloquy that Sims was pleading guilty to a single charge of aggravated assault. Later, however, after reciting the factual basis for the charge, the prosecutor stated, “for the record, the State agrees, upon acceptance of his guilty plea in Count Three, the State agrees to dismiss Counts One and Two, but asks that restitution be considered for all three counts.” (Emphasis added.) This is the first point in the record at which the State expressed its intention to seek restitution for all three individuals named in the three original counts of the indictment, and there is nothing to show that Sims was aware of the State’s objective prior to its post-plea announcement.
¶ 14. The majority correctly observes that “a defendant can forego rights — even constitutional rights — in order to avoid more severe punishment.” This presupposes, however, that Sims actually agreed to plead guilty to the aggravated assault upon Broome and to pay restitution to Broome and Stevens. According to the majority, “Sims pleaded guilty to the charge of aggravated assault against Broome and was ordered to pay restitution to Broome and Stevens. In exchange, the State agreed to dismiss the charges of aggravated assault against Stevens and Robinson.” (Emphasis added.) The Court of Appeals articulated a similar analysis: “it seems obvious that Sims had a plea agreement or, at the least, an understanding, that if he pleaded guilty to one of the aggravated-assault counts, the State would dismiss the other two counts upon Sims’s agreement that he would pay restitution to all the victims.” Sims v. State, 134 So.3d 317, 327-28 (Miss.Ct.App.2013). I do not disagree with the majority that “in exchange for his plea of guilty, two aggravated-assault charges against Sims were dismissed.” But the record is entirely devoid of any agreement, oral or written, between Sims and the State regarding payment of restitution in exchange for a guilty plea, and we decline to take the *306 speculative leaps necessary to such a finding.
¶ 15. The majority cites Butler v. State, 544 So.2d 816, 821 (Miss.1989), for the proposition that restitution may “be imposed at any stage of the criminal process through informal, government-sanctioned compromises and settlements between offender and victim so long as detention is not used to induce an agreement.” In Butler, however, the defendant was convicted of one count of manslaughter, his prison sentence was suspended, and he was placed on probation. As a condition of his probation, Butler was ordered to make monthly payments to the minor child of the victim as “child support.” Id. On appeal, the defendant challenged the payments, arguing that they were outside the scope of Mississippi Code Section 99-37-1. Id.
¶ 16. Examining the statutory language, the Butler Court recognized that “it appears that the payment of restitution is not limited only to the person that has been directly injured by a guilty party; the payment of restitution can also be éxtended to members of the victim’s family who suffer pecuniary damages.” Id. at 821. This Court also determined that lost child support was a “type of special damages that is encompassed under the [restitution] statute.” Id. at 823. However, the Court ultimately reversed and voided the support aspect of the court-ordered restitution, because it never had been established that the victim was the child’s biological father. Id. Because the child was born during the mother’s marriage to another man, her husband was the presumed father, not the victim. Id. (“The presumption that a child born in wedlock is the legitimate child of the husband is one of the strongest presumptions known to law and may be overcome only by proof beyond a reasonable doubt that the husband is not the father.”) (citations omitted). The Court found that the child of the victim was not “a legally eligible recipient,” because, without the paternity of the decedent having been judicially established in a paternity hearing, the legal presumption of paternity remained in effect. Id.
¶ 17. The case before us is readily distinguished from Butler since, in that case, the defendant’s criminal act would have deprived the victim’s minor child of financial support, if, indeed, paternity had been established. Unlike Butler, any pecuniary damage suffered by Stevens was not a consequence of Broome’s injuries. Stevens’s injuries were neither directly nor indirectly tied to Broome’s status as a victim of the crime for which Sims was convicted.
¶ 18. Even though all of the original counts may have arisen from the same high-speed chase and allegedly involved the same perpetrator, each count constituted an independent, stand-alone charge. The rules adopted by this Court authorizing the use of multiple count indictments clearly contemplate distinct charges. URCCC 7.07(A) (“Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense ....”) (emphasis added). The rule also requires “a separate verdict for each count,” and “[w]hen a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.” URCCC 7.07(C), (D) (emphasis added). Because each count of aggravated assault specified only one victim, Virgie Stevens cannot be a victim of the count of aggravated assault that applied to Mary Beth Broome, absent some relevant familial relationship between the two. See Butler, 544 So.2d 816 (parent and child).
*307 ¶ 19. Further, notwithstanding the conclusion of the majority and the Court of Appeals below that Sims had agreed that the State’s offer to dismiss two of the aggravated assault charges included his paying restitution to all of the victims, a defendant cannot agree to a legally void punishment. The trial judge was without authority to assess Sims with Stevens’s pecuniary damages. The count of aggravated assault against Stevens was dismissed at the instance of the State. Therefore, the court’s ordering Sims to pay restitution to Stevens constituted punishment for a crime of which he was not convicted, and, at the point at which the restitution to Stevens was ordered, with which Sims was not charged. Clearly, the punishment exceeded that authorized by the legislature. See, e.g., Nichols v. State, 826 So.2d 1288, 1291 (Miss.2002) (“[S]en-tencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.”) (emphasis added). See also Butler, 544 So.2d at 828 (holding that, despite the defendant’s acceptance of restitution as a condition of probation, the provision ordering payments was void because the recipient was not “legally eligible”). Thus, I find that the imposition of restitution to Stevens is void as an illegal punishment.
¶ 20. Finally, the majority echoes the argument of the Court of Appeals, citing Shook v. State, 552 So.2d 841, 851 (Miss. 1989), that “Sims should not now be allowed to complain,” since neither he nor his trial attorney objected to the imposition or amount of restitution. But Shook was ordered to pay restitution after having been convicted and sentenced “on one count of aggravated assault and of shooting into an occupied dwelling.” Id. at 843. Here, the trial court ordered that Sims pay restitution for the count of aggravated assault to which he pled guilty, and the trial court ordered that Sims pay restitution for one of the two counts of aggravated assault which the trial court had dismissed. Thus, Shook is distinguishable. Likewise, the majority cites Harris v. State, 757 So.2d 195, 199 (Miss.2000). However, at issue in Harris was the amount of restitution rather than the legality of the ordered restitution. This Court stated “that by failing to object at sentencing to imposition of a specified amount for restitution for the vietim[,] [defendant] waived this issue on appeal.” Id. (emphasis added) (citing Powell v. State, 536 So.2d 13, 17 (Miss.1988)). Harris is distinguishable from the present case because the question before us is the legality of the restitution rather than its specified amount.
¶ 21. Because Sims was convicted only of the assault of Mary Beth Broome, I would hold that court-ordered restitution to Stevens exceeded the bounds of Mississippi Code Section 99-37-1, and I would reverse the Marion County Circuit Court’s dismissal of Sims’s petition for post-conviction relief, as well as the Court of Appeals’ affirmance of that dismissal. I therefore respectfully dissent.
DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.